**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| Gricelda Ontiveros, | |
| Plaintiff, | |
| v. | Case No. 21 C 2335 |
| | Hon. LaShonda A. Hunt |
| Exxon Mobil Corporation,[1] | |
| Defendant. | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Gricelda Ontiveros filed this lawsuit against her former employer, Exxon Mobil Fuels & Lubricants Company (now Exxon Mobil Corporation), asserting claims of age discrimination in violation of the Age Discrimination in Employment Act of 1967 ("ADEA") (Count I), gender discrimination in violation of Title VII of the Civil Rights Act of 1964 (Count II), and retaliation in violation of the ADEA and Title VII (Count III). Defendant seeks summary judgment on all of Plaintiff's claims. For the reasons discussed below, Defendant's motion for summary judgment [39] is granted.

## BACKGROUND

The facts are taken from the parties' Local Rule 56.1 Statements and are undisputed unless otherwise noted.[2] In August 2010, Plaintiff began working for Defendant as a contractor at its

---

[1] Plaintiff originally filed suit against Exxon Mobil Fuels & Lubricants Company; however, Defendant contends that Exxon Mobil Corporation is the proper defendant in this action. (*See* Compl., Dkt 1; Def. Mot. Summ. J. at 1 n.1, Dkt. 39). Defendant's filings explain that Exxon Mobil Fuels & Lubricants Company was a division of Exxon Mobil Corporation, but the entity was terminated as of April 1, 2022, and the applicable business line became a part of Exxon Mobil Product Solutions Company, a division of Exxon Mobil Corporation. Plaintiff does not dispute that Exxon Mobil Corporation is the proper Defendant. Accordingly, the Court substitutes Exxon Mobil Corporation as Defendant in this case.

[2] Each party raised general objections to the opposing party's respective LR 56.1 statement. Plaintiff objects to Defendant's LR 56.1 statement to the extent it contains legal arguments and conclusions and relies on self-serving testimony and declarations of witnesses that were deposed during discovery. Defendant objects to certain paragraphs of Plaintiff's LR 56.1 statement as containing lengthy recitations of facts that are unsupported by citations to the

facility in Cicero, Illinois (the "Cicero Facility"). (PRDSOF[3] ¶ 11). In May 2015, Plaintiff was hired by Defendant as a customer service analyst. (*Id*. ¶ 12). In this role, Plaintiff was responsible for handling purchase and sales orders, checking and forecasting inventory, and handling customer complaints and service requests, amongst other tasks. (*Id*.) Plaintiff's position was classified as an Operations, Clerical, and Administrative ("OCA") position. (*Id*.) Plaintiff was the only customer service analyst at the Cicero Facility, and she was the only OCA employee in the Cicero Facility's business support department. (*Id*.) Between the time Plaintiff was hired until her termination in September 2019, Plaintiff had three supervisors: Juliana Gerardo; Jason Montoya; and Pablo Villatoro. (*Id*. ¶ 14). Raul Sanchez was the Plant Manager at the Cicero Facility from April 2017 through Plaintiff's termination in September 2019. (*Id*. ¶ 10). During the relevant period, Villatoro reported to Sanchez. (*Id*. ¶ 15).

## I.    Performance Assessment Process

Each year while she was employed by Defendant, Plaintiff participated in the company's annual performance assessment development process. (*Id*. ¶¶ 18, 24, 25, 29, 47). The assessment period spanned from April through March. (*Id*. ¶ 18). While Plaintiff disputes Defendant's characterization of how the process worked, Defendant asserts that managers collaborated in the summer to assess each employee based on their performance and their relative performance as compared to their peers in an assigned assessment group. (*Id*. ¶ 19). These groups were typically comprised of employees with similar job classifications and similar roles; however, the group may be made up of employees in different locations and who have different supervisors. (*Id*.)

---

record. These objections are noted, and the Court "independently determines whether each paragraph mischaracterizes the evidence, whether the evidence supports the proposition for which it is cited, and whether the material cited in response creates a genuine dispute of material fact." *Kotoklo v. DePaul Univ.*, No. 20 C 635, 2021 WL 4477947, at *2 (N.D. Ill. Sept. 30, 2021).

[3] Plaintiff's Response to Defendant's Local Rule 56.1(A)(3) Statement of Undisputed Material Facts, Dkt. 45.

In late summer or early fall, employees receive their final performance assessment category for the prior year. (*Id*. ¶ 21). OCA employees, like Plaintiff, receive letter grades of A, B, C, or D (with A being the highest). (*Id*. ¶ 20). Employees who receive a "D" are placed into the Management of Lower Relative Performance ("MLRP") program. (*Id*. ¶ 22). Under the MLRP program, the employee is offered the option to either (a) continue working under a performance improvement plan ("PIP") with the goal of improving their performance or (b) stop working and continue to receive their base salary and outplacement services for a designated period ("Pay in Lieu"). (*Id*.) Plaintiff contends that the MLRP program is a "formality" presented to employees whom the company wants to get rid of and that employees are advised not to take the PIP option, as very few employees successfully complete a PIP. (*Id*.)

## II.      **Plaintiff's Performance Assessments**

In 2016, Plaintiff was evaluated by her then supervisor, Montoya, and was assessed a "B." (*Id*. ¶ 24). Montoya noted Plaintiff's accomplishments and provided constructive feedback, including that Plaintiff could improve in the areas of "time management, effective communication, issue resolution, and service request investigation quality/effectiveness." (*Id*.)

In 2017, Plaintiff was again evaluated by Montoya; however, he did not deliver the feedback because he was no longer Plaintiff's supervisor at the time of the final performance assessment meeting. (*Id*. ¶¶ 25, 26). Defendant claims that Sanchez delivered the feedback, while Villatoro, Plaintiff's supervisor, sat in the meeting. (*Id.* ¶ 26). Plaintiff, on the other hand, says that Villatoro delivered the feedback while Sanchez observed. (*Id.*) Either way, it is undisputed that Plaintiff was assessed a "B." (*Id.*) As before, Plaintiff's accomplishments were noted, as well as her opportunities for development in the areas of "Safety Leadership, Effective Communication,

Issue Resolution, LIFR, [service request] closure, timeliness, and expanding inventory knowledge." (*Id*. ¶¶ 25-26).

In 2018, Plaintiff was assessed a "C" based on similar concerns that had been raised in prior years. (*Id*. ¶ 30). Villatoro identified "her difficulty meeting deadlines, failing to set up consistent 1 on 1 meetings with her supervisor, little to no response to direct management requests, consistent inability to follow through on commitments, difficulty taking/applying direction, LPS/safety leadership and minimal valuate (sic) added steps outs contributing to her performance." (*Id*. ¶ 29, 30). Plaintiff contends that her "C" assessment was unwarranted. (*Id*.)

During and after the 2019 performance assessment period, there were several documented concerns related to Plaintiff's performance of her job duties, including:

- On July 18, 2018, Villatoro emailed Plaintiff with specific instructions and feedback on reporting service request-related data. (*Id*. ¶ 32).

- In September 2018, there was an issue related to a service request which Plaintiff did not timely open. (*Id*. ¶ 33).

- In December 2018, Villatoro and Plaintiff had a 1 on 1 discussion regarding the need to meet service request commitments and deadlines. (*Id*. ¶ 34).

- In January 2019, Villatoro and Plaintiff had another 1 on 1 discussion regarding missed deadlines. (*Id*. ¶ 35).

- In January 2019, Plaintiff received a written warning for failing to obtain approval from Villatoro in advance of working overtime. (*Id*. ¶ 37).

- In May 2019, Plaintiff was delayed in updating service request data reports. (*Id*. ¶¶ 40, 41). On one occasion, Villatoro had to follow up with Plaintiff multiple times to obtain the necessary report. (*Id*. ¶ 40). On another occasion, Villatoro had to leave out data from a monthly performance review because of Plaintiff's delay. (*Id*. ¶ 41).

- In June 2019, Villatoro reminded Plaintiff that she was not supposed to code any future shortages of product and explained to her how her conduct created confusion for others. (*Id*. ¶ 42).

- In July 2019, Villatoro instructed Plaintiff that all service requests needed to be completed within two business days of the request. (*Id*. ¶ 43).

- In August 2019, Villatoro emailed Plaintiff about a service request that was not created until ten months after the initial request. (*Id*. ¶ 44).

Additionally, though undocumented, Defendant contends that around January 2019, Sanchez received complaints from operations supervisors and other employees about Plaintiff engaging in unprofessional conduct and failing to timely deliver requested business information. (*Id*. ¶ 36). As a result of these issues, Plaintiff received the rank of "D" for the 2019 assessment period. (*Id*. ¶ 47). Villatoro subsequently prepared a draft PIP document for Plaintiff. (*Id*. ¶ 48).

### III.    **Plaintiff's Termination**

On August 28, 2019, Sanchez and Shannon McGuire, Human Resources Advisor, met with Plaintiff to discuss the results of her 2019 performance assessment, and to inform her that she would be in the MLRP program and had 21 days (until September 18, 2019) to choose a PIP or Pay in Lieu. (*Id*. ¶ 49). The events that transpired during that meeting and immediately thereafter are contested.

According to Defendant, before Sanchez and McGuire could explain the MLRP options, Plaintiff stood up, threw the paperwork down on the table, became visibly upset, and walked out of the meeting. (*Id*. ¶ 50). Sanchez followed Plaintiff to her desk and told her they needed to continue the meeting. (*Id*.) Plaintiff then began yelling and cursing at Sanchez. (*Id*.) Sanchez walked away to find McGuire, but Plaintiff followed him. (*Id*.) Sanchez thought Plaintiff was going to hit him and he was concerned about employee safety. (*Id*. ¶ 52). Accordingly, Sanchez and McGuire told Plaintiff that her behavior was inappropriate, and she needed to go home for the day, but Plaintiff refused. (*Id*. ¶ 53). Plaintiff left only after Sanchez told her that if she did not leave, he would call authorities to escort her out of the building. (*Id*.) The same day, Sanchez sent an

email to McGuire summarizing his version of the events that occurred during the meeting. (*Id*. ¶ 51).

According to Plaintiff, she excused herself from the meeting after she was informed of the results of the performance assessment. (*Id*. ¶ 50). Sanchez followed Plaintiff to her desk, where Plaintiff asked what she did wrong and explained that she was going back to work and would make a decision regarding the MLRP process but did not want to sign anything at that time. (*Id*.) Plaintiff says she was offered to take the rest of the day off, but she opted to stay. (*Id*.) However, after Plaintiff chose to stay, Sanchez insisted that she leave. (*Id*.) Plaintiff insists that she did not curse or yell during her interaction with Sanchez. (*Id*.)

Following this incident, Defendant decided that the PIP option would no longer be available to Plaintiff; she could accept Pay in Lieu under the MLRP program or her employment would be terminated. (*Id*. ¶ 54). After multiple unsuccessful attempts to reach Plaintiff by phone, Plaintiff was notified by email on September 9, 2019 that "as a result of the disrespectful and unprofessional behavior [she] displayed during and after [her] performance review," she had to choose between Pay in Lieu or termination by September 18, 2019. (*Id*. ¶¶ 57-58). Plaintiff maintains that she should have had 21 days from the date of the email to decide. (*Id*. ¶ 57-58). Defendant terminated her employment on September 19, 2019, after she failed to notify Defendant of her decision. (*Id*. ¶ 58). At the time of her termination, Plaintiff was 42 years old, Sanchez was 40 years old, and Villatoro was 35 years old. (*Id*. ¶¶ 2, 15, 17).

IV.     **Plaintiff's Prior Complaints**

Plaintiff raised several complaints while employed by Defendant. First, on September 26, 2018, Plaintiff called the employee hotline to report that she was not receiving compensation for

overtime. (DRPSOF[4] ¶ 10). While Plaintiff says that she had a heavy workload and properly requested overtime, Defendant claims that Plaintiff's overtime requests were denied because she failed to follow the appropriate pre-approval procedures. (*Id*. ¶ 11). Plaintiff was interviewed by Brad Rajek, HR Manager, and Mari Tello, HR Advisor, on October 12 and 15, 2018, regarding her overtime complaint. (*Id*. ¶ 12). After the investigation, Defendant compensated Plaintiff for unpaid overtime. (*Id*.; PRDSOF ¶ 60).

Next, on November 12, 2018, Plaintiff contacted Rajek "to discuss various harassment/ hostile work environment claims against" Sanchez and Villatoro. (*Id*. ¶ 13). In her conversation with Rajek, Plaintiff noted that there was an environment of "machismo" at the facility. (*Id*.) Christoper Holstead and Cecily Gordon investigated Plaintiff's complaint. (PRDSOF ¶ 62). Holstead and Gordon interviewed Plaintiff and seven other individuals, including four of Villatoro's direct reports (two men and two women), a woman who worked at the Cicero Facility as laboratory chemist, Villatoro, and Sanchez. (*Id*. ¶ 63). During the investigation, Plaintiff reported conduct by Sanchez that made her feel uncomfortable, including a comment that Sanchez made about sitting next to her. (DRPSOF ¶ 17). Plaintiff also reported that Sanchez and Villatoro made disparaging and demeaning comments towards her. (*Id*. ¶ 18). Male employees also gave negative feedback about Sanchez, including a male employee who reported that Sanchez called his work "garbage." (PRDSOF ¶ 65).

After the investigation, Defendant concluded that although Sanchez and Villatoro did not violate any company policies, there was "extremely low morale in the business support group" and employees felt that it was difficult to complete the assigned tasks within an 8-hour workday. (*Id*. ¶ 66). The investigation report also noted that none of the witnesses that were interviewed indicated

---

[4] Defendant's Response to Plaintiff's Statement of Additional Material Facts, Dkt. 50.

that they were "experiencing or facing or brought forward any issues around age discrimination, gender discrimination[,] or sexual harassment." (*Id*.) While the alleged sexually harassing behavior stopped after the November 2018 complaint, Plaintiff contends that thereafter she was punished more excessively than others. (*Id*. ¶ 71).

In January 2019, Villatoro counseled Plaintiff regarding overtime procedures. (DRPSOF ¶ 26). Plaintiff contends that, during the counseling, Villatoro threated to terminate her for not following the proper overtime procedures. (*Id*.) Thereafter, Plaintiff reached out to Holstead and expressed that she felt that she was being retaliated against based on Villatoro's alleged threat of termination. (*Id*. ¶ 27).

Following her termination, in January 2020, Plaintiff filed a charge of discrimination with the EEOC asserting sex and age discrimination and retaliation. (PRDSOF ¶ 78).

This litigation ensued, and after completing discovery, Defendant filed a motion for summary judgment on Plaintiff's claims of age discrimination, general discrimination, and retaliation. The motion is fully briefed and ripe for ruling.

## **LEGAL STANDARD**

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Zaya v. Sood*, 836 F.3d 800, 804 (7th Cir. 2016). In cases where the movant does not bear the burden of proof, the movant must simply point to an absence of evidence to support the nonmovant's case. *Modrowski v. Pigatto*, 712 F.3d 1166, 1168 (7th Cir. 2013). The burden then shifts to the non-moving party to demonstrate "specific facts showing that there is a genuine issue for trial," *Celotex Corp. v, Catrett*, 477 U.S. 317, 324 (1986), and support their position with "more

8

than a scintilla of evidence." *Conley v. Vill. of Bedford Park*, 215 F.3d 703, 709 (7th Cir. 2000). All facts and inferences are construed in the light most favorable to the nonmoving party. *Nischen v. Stratosphere Quality, LLC*, 865 F.3d 922, 928 (7th Cir. 2017).

## DISCUSSION

Plaintiff contends that she was unlawfully terminated based on her age and gender and in retaliation for complaining about her supervisors' conduct. Defendant, on the other hand, argues that it had a legitimate business reason for terminating Plaintiff after she behaved unprofessionally during a meeting to discuss her unsatisfactory performance assessment. After considering the parties' arguments and reviewing the record, the Court finds that no reasonable jury could conclude that Plaintiff was terminated because of her age, gender, or in retaliation for her complaints. Because Plaintiff's claims fail as a matter of law, Defendant is entitled to summary judgment.

## I.    Age Discrimination

"The ADEA protects workers 40 years of age and older from age-based employment discrimination." *Tyburski v. City of Chi.*, 964 F.3d 590, 598 (7th Cir. 2020) (quoting *Wrolstad v. Cuna Mut. Ins. Soc'y*, 911 F.3d 450, 454 (7th Cir. 2018)). In that regard, the ADEA provides that it is "unlawful for an employer . . . to discharge any individual or otherwise discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment because of such individual's age." 29 U.S.C. § 623(a)(1). However, "in the ADEA context, it's not enough to show that age was a motivating factor [for the adverse action]. The plaintiff must prove that, but for [her] age, the adverse action would not have occurred." *Tyburski*, 964 F.3d at 598.

Generally, a plaintiff making age discrimination claims can defeat summary judgment in one of two ways. *Rogers v. Chi. Bd. of Educ.*, 261 F. Supp. 3d 880, 887 (N.D. Ill. 2017). First, she

can point to sufficient evidence in the record, whether direct, indirect, or circumstantial, from which a reasonable jury could conclude that defendant fired her because of her age. *Id*. This is the test set forth in *Ortiz v. Werner Enterprises, Inc.*, 834 F.3d 760, 764 (7th Cir. 2016). *Rogers*, 261 F. Supp. 3d at 887. *Ortiz* states that "'evidence must be considered as a whole, rather than asking whether any particular piece of evidence proves the case by itself—or whether just the 'direct' evidence does so, or the 'indirect' evidence. . . . Relevant evidence must be considered and irrelevant evidence discarded, but no evidence should be treated differently from other evidence because it can be labeled 'direct' or 'indirect.'" *Rogers*, 261 F. Supp. 3d at 887 (quoting *Ortiz*, 834 F.3d at 765).

A plaintiff may also rely upon the burden-shifting framework created by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Rogers*, 261 F. Supp. 3d at 887-88. Under this approach, a plaintiff must first present evidence to establish a prima facie case that: (1) she is a member of a protected class; (2) she was satisfying her employer's legitimate expectations; (3) she suffered an adverse employment action; and (4) similarly situated employees outside her protected class were treated more favorably. *Id*. If the plaintiff satisfies this initial burden, then the employer must articulate a legitimate, non-discriminatory reason for the adverse action. *Id*. The burden then shifts back to the plaintiff to submit evidence that the employer's explanation is pretextual. *Id*.

Here, Defendant contends that Plaintiff cannot establish a prima facie case under the *McDonnell Douglas* framework, while Plaintiff argues that she satisfies *Ortiz*. "Regardless of which method is used, 'the fundamental question at the summary judgment stage is simply whether a reasonable jury could find prohibited discrimination.'" *Id*. (quoting *Bass v. Joliet Pub. Sch. Dist. No. 86*, 746 F.3d 835, 840 (7th Cir. 2014)). *See also Igasaki v. Ill. Dep't of Fin. & Pro. Regul.*,

988 F.3d 948, 957-58 (7th Cir. 2021) ("[A] plaintiff need not use the *McDonell Douglas* framework after *Ortiz*. At summary judgment, what matters is whether a plaintiff presented enough evidence to allow the jury to find in his favor.") (internal quotations and alterations omitted). Even after affording Plaintiff the benefit of all reasonable inferences and viewing her claims through the *Ortiz* lens, the Court concludes that Plaintiff has failed to point to any evidence to show that her age was the "but for" cause of her termination. *See Skiba v. Ill. Cent. R.R. Co.*, 884 F.3d 708, 720 (7th Cir. 2018) ("However the plaintiff chooses to proceed, at the summary judgment stage the court must consider all admissible evidence to decide whether a reasonable jury could find that the plaintiff suffered an adverse action *because of* her age.") (emphasis in original).

Plaintiff relies on three facts in support of her position that a reasonable fact finder could conclude that age bias caused her termination. First, Plaintiff notes that she had been consistently ranked as a "B" prior to Sanchez and Villatoro, who were respectively 2 and 7 years younger than her, became her supervisors in the 2017-2018 timeframe. But that fact, standing alone, is insufficient to link her declining performance reviews to age or any other discriminatory motive. *See Jackson v. Bd. of Educ. of Rockford Pub. Sch.*, No. 08 C 50201, 2012 WL 4120517, at *5 (N.D. Ill. Sept. 18, 2012) (While the principal's "evaluation of plaintiff indicate[d] she wanted to get rid of [the employee], nothing about [the evaluation] shows [it] to be motivated by race, gender, age, or retaliation as opposed to personal animosity or a belief he was not suited to his position.").

Indeed, the record reflects that Villatoro identified numerous areas of improvement and documented concerns in 2018 and 2019 regarding Plaintiff's failure to timely address service requests, among other issues. (*See* 2018 Performance Discussion Summary, Ex. E-2, Dkt. 40-6; PRDSOF ¶¶ 33-37, 41-44). His criticisms were consistent with earlier constructive feedback by

Montoya (whose age is not provided in the record) to Plaintiff in 2016 and 2017 about time management, issue resolution, and service request closure. (PRSDOF ¶¶ 24-26). Nothing in the record suggests a connection between Plaintiff's negative performance evaluations and her age. *See Alexander v. bioMerieux, Inc.*, 270 F. App'x 422, 428 (7th Cir. 2008) ("Circumstantial evidence requires a long 'chain of inferences,' and it is only 'if each link is solid' that it suffices to create a genuine issue of fact for trial.").

Next, Plaintiff points to the fact that Villatoro was increasing Plaintiff's workload, while denying her overtime hours. But again, Plaintiff fails to explain how the increased workload or the denial of her overtime hours were related to her age or any other discriminatory motive. *See Leach v. Brennan*, No. 15 C 11392, 2018 WL 4590299, at *6 (N.D. Ill. Sept. 25, 2018) (Plaintiff "does not point to any evidence (or even argue) that any increase in workload was imposed because of his race or retaliation, that it was designed as a pretextual means for him to fail, or that others outside the protected class were not assigned a comparable level of work. Thus[,] no reasonable jury could conclude that the increase in [plaintiff's] workload was the result of race discrimination or retaliation."). In fact, other employees also indicated that it was difficult for them to complete assigned tasks in an eight-hour workday. (PRSDOF ¶ 66). Thus, Plaintiff has not shown that she was singled out for more work or denied overtime hours, let alone terminated because of her age.

Finally, Plaintiff points to purported comparators—Nicole Salvaggio and Salvatore Saucedo—whom she claims were younger and treated more favorably. As to Salvaggio, Plaintiff contends that Sanchez helped her get a job, even though she did not any have prior experience. As to Saucedo, Plaintiff contends that there was an incident where he startled another employee, Margaret Jeziorski, from behind and Sanchez blamed them both for "monkey business" even after Saucedo admitted he was at fault.

"To prevail by showing a similarly situated employee was treated differently, a plaintiff must show the purported comparator was 'directly comparable to her in all material respects' so as to 'eliminate other possible explanatory variables.'" *Downing v. Abbott Lab'ys*, 48 F.4th 793, 805-06 (7th Cir. 2022), *reh'g denied*, No. 21-2746, 2022 WL 7291035 (7th Cir. Oct. 12, 2022), *cert. denied*, 143 S. Ct. 1012 (2023) (quoting *Williams v. Off. of Chief Judge of Cook Cnty.*, 839 F.3d 617, 626 (7th Cir. 2016)). "The employees who are purportedly similarly situated must deal with the same supervisor, be subject to the same standards, and 'have engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their employer's treatment of them.'" *Id.* Here, Defendant contends that Plaintiff was terminated because of her "insubordinate and unprofessional behavior" during the August 28, 2019 performance assessment meeting. (Def. Mem. at 7, Dkt. 41). Plaintiff points to nothing to show that Salvaggio engaged in any workplace misconduct. And while Plaintiff asserts that Saucedo engaged in "monkey business" at work, such conduct is not comparable to the type of misconduct of which Plaintiff was accused. Plaintiff was ordered to leave the premises due to safety concerns; Saucedo was verbally reprimanded for horseplay. Neither Salvaggio nor Saucedo is a proper comparator. *See Burks v. Wis. Dep't of Transp.,* 464 F.3d 744, 751 (7th Cir. 2006) ("[I]n order to show that a coworker is similarly situated to a terminated employee, the employee must show that the other coworker had a comparable set of failings.").

Because the Court must view the evidence as a whole, the Court also considers Defendant's stated reasons for Plaintiff's termination. *See Brown v. FedEx Corp.*, No. 20 C 7290, 2022 WL 267916, at *4 (N.D. Ill. Jan. 28, 2022) (finding that plaintiff's ADEA claim failed under the "*Ortiz* holistic approach" because defendant's justification for plaintiff's termination was "eminently reasonable."). The record evidence shows that, in 2019, Plaintiff was assessed a "D" and placed in

the MLRP program. According to Defendant, after Plaintiff behaved unprofessionally during the performance assessment meeting, the PIP option was removed, and Plaintiff was given the option of Pay in Lieu or termination. After Plaintiff failed to respond to Defendant's offer, her employment was terminated.

While Plaintiff disputes that she behaved as badly as Defendant describes, her personal belief cannot create a factual dispute in the absence of some evidence that Defendant's decision to terminate her was motivated by her age. *See Mirocha v. Palos Cmty. Hosp.*, 240 F. Supp. 3d 822, 844 (N.D. Ill. 2017) ("Plaintiff asserts that the real reason for his termination was age discrimination, but he offers no evidence that anyone . . . bore animus toward him due to his age or that his termination resulted from such alleged animus. Based on these facts, no reasonable factfinder could conclude that Plaintiff was terminated because of his age."); *Addie v. Career Acad. of S. Bend, Inc.*, No. 16 C 513, 2019 WL 1382905, at *7 (N.D. Ind. Mar. 27, 2019) ("Viewing all of [the] evidence collectively, no jury could reasonably conclude that [plaintiff] was fired because of his age. [Plaintiff] has not rebutted [defendant's] stated reason for terminating his employment or otherwise offered evidence suggesting that his age caused that decision.") (internal citations omitted); *Burnett v. Franciscan All., Inc.*, No. 21 C 227, 2024 WL 983726, at *13 (N.D. Ind. Mar. 6, 2024) ("The record largely shows that the [plaintiff's] poor job performance and the multiple complaints from her rehabilitation unit team members and patient family members were the reasons for her termination. Other than her subjective beliefs, the [plaintiff] provides no evidence that race, religion, or age discrimination influenced the [defendant's] decision to terminate her.").

More importantly, whether termination was warranted under the circumstances is not for the Court to determine. *See Blise v. Antaramian*, 409 F.3d 861, 867 (7th Cir. 2005) (The Court does not "sit as a superpersonnel department where disappointed employees can have the merits

14

of an employer's decision replayed to determine best business practices.") (internal quotations omitted). Viewing the evidence as a whole, Plaintiff has failed to put forth any evidence suggesting that her age, and not her behavior during the August 2019 meeting and subsequent failure to timely respond to Defendant's resignation offer, was the real reasons for her termination. Thus, a reasonable jury could not find that Plaintiff was discriminated against because of her age.

Accordingly, Plaintiff's age discrimination claim fails.

## II.     __Gender Discrimination__[5]

Under Title VII of the Civil Rights Act, an employer may not "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin . . . ." 42 U.S.C. § 2000e-2(a)(1). In Title VII cases, "an unlawful employment practice is established when the [plaintiff] demonstrates that race, color, religion, sex, or national origin was a motivating factor for any employment practice, even though other factors also motivated the practice." *Id.* at § 2000e-2(m). Like an ADEA claim, a plaintiff can defeat summary judgment on a Title VII claim by using the *McDonnell Douglas* framework or by establishing that the evidence would permit a reasonable factfinder to conclude that Plaintiff's gender was a motivating factor in the adverse employment

---

[5] While Plaintiff does not assert a separate cause of action for sexual harassment, within the context of her gender discrimination claim, Plaintiff alleges that Defendant discriminated against her "by not taking adequate measures to remedy the harassment of a supervisor, of which she complained to Defendant." (Compl. ¶ 29, Dkt. 1). Accordingly, to the extent that Plaintiff asserts a sexual harassment claim, Defendant moved for summary judgment on such claim, arguing that (1) the claim is time barred, (2) Plaintiff cannot establish the elements of sexual harassment, and (3) Plaintiff failed to report any sexually harassing behavior to Defendant. (Def. Mem. at 8-12). Plaintiff failed to oppose Defendant's motion for summary judgment as to the sexual harassment claim. Thus, Plaintiff has waived any purported sexual harassment claim. *See Rabe v. United Air Lines, Inc.*, 971 F. Supp. 2d 807, 820 (N.D. Ill. 2013) ("As [the plaintiff's] response brief failed to even address [the defendant's] argument regarding retaliation, the court concludes that [the plaintiff] has waived and abandoned this claim."); *De v. City of Chi.*, 912 F. Supp. 2d 709, 734 (N.D. Ill. 2012) ("Failure to set forth any evidence or to develop any arguments in opposition to the moving party's summary judgment motion results in waiver of the nonmoving party's arguments and an abandonment of his claims.") (collecting cases).

action. *See Cora v. Tootsie Roll Indus., LLC*, No. 18 C 07468, 2024 WL 1363537, at *5 (N.D. Ill. Mar. 29, 2024).

Although adverse employment action is defined broadly, not everything that makes an employee unhappy is an actionable adverse action. *Lewis v. City of Chi.*, 496 F.3d 645, 653 (7th Cir. 2007). For an employment action to be actionable, it must have left an employee '"worse off" with respect to the terms and conditions of [her] employment." *Phillips v. Baxter*, No. 23 C 1740, 2024 WL 1795859, at *3 (7th Cir. Apr. 25, 2024) (quoting *Muldrow v. City of St. Louis*, 144 S.Ct. 967, 977 (2024)).

As an initial matter, Defendant contends that Plaintiff does not state what alleged adverse actions were based on her gender. Because Plaintiff failed to argue that a specific adverse employment action was caused by her gender, the Court focuses on Plaintiff's termination as "termination certainly qualifies as an adverse employment action." *Haywood v. Lucent Techs., Inc.*, 323 F.3d 524, 531 (7th Cir. 2003), overruled on other grounds by *Ortiz*, 834 F.3d 760.

As to the termination, Defendant argues that Plaintiff's gender discrimination claim fails because Plaintiff has not pointed to any evidence to refute that she was terminated based on her behavior during the August 2019 meeting. Plaintiff, on the other hand, argues that a reasonable fact finder could conclude that gender caused the adverse action because there is evidence of gender bias at the Cicero Facility. The Court is not persuaded that the evidence Plaintiff identifies proves any such bias.

First, Plaintiff contends that Sanchez employed all males as his direct subordinates, and the one female direct subordinate that Sanchez inherited, Amee Patel, accepted resignation via the MLRP process. (DRPSOF ¶ 2). However, Defendant argues, and the evidence supports, that Patel's

departure cannot be evidence of Sanchez's alleged animus towards women since Sanchez was not involved with Patel's evaluation or MLRP process. (*Id.*) The Court agrees.

Second, Plaintiff argues that no male employees were presented with the MLRP process. However, she concedes that a male OCA employee in Defendant's fuels and lubricants midstream operations department, Stephen Kimber, received a "D" during the 2019 performance assessment period and, as a result, was placed in the MLRP process. (PRDSOF ¶ 59; Def. Reply at 8, Dkt. 49).

Next, Plaintiff points to the fact that Villatoro was increasing her daily tasks while declining her overtime hours, and she received "B" rankings prior to Sanchez and Villatoro becoming her supervisors. However, as discussed *supra*, Plaintiff fails to connect either of these circumstances to her gender or any other discriminatory motive. *See Davis v. DeJoy*, No. 20 C 7456, 2023 WL 5671623, at *9 (N.D. Ill. Sept. 1, 2023) (finding that plaintiff's discrimination claim failed because plaintiff failed to put forth any evidence that connected the list of allegedly discriminatory actions to his termination *or* an unlawfully discriminatory motive) (emphasis in original).

Additionally, Plaintiff contends that Sanchez and Villatoro created an environment of "machismo" and that female employees were being terminated one by one. As to the environment of "machismo," Defendant investigated, and no one reported issues of gender discrimination. (PRDSOF ¶ 66). Plaintiff does not dispute the investigation findings. (*Id.*) And Defendant asserts that Sanchez and Villatoro were not involved in the process that led to the separation of three of the four female employees who Plaintiff identified as leaving the facility. The Court cannot impute gender bias to them based on the actions of other decision makers. The fourth woman, Jeziorski, was presented with the MLRP process and elected to resign. (DRPSOF ¶ 8). But Plaintiff has not shown that Jeziorski's placement in the MLRP process was unjustified or discriminatory. Thus, the Court cannot make that leap of logic that gender bias motivated that result.

Finally, Plaintiff points to testimony from herself and Jeziorski that Sanchez stared at women, winked at them, and made inappropriate comments towards them. Defendant contends that even if these allegations are true, they do not create a genuine issue of material fact concerning Plaintiff's termination. The Court agrees. *See Curry v. Menard, Inc.*, 270 F.3d 473, 477 (7th Cir. 2001) (finding that inappropriate remarks were not evidence of discrimination because they were not related to the employment decision in question."); *Perez v. Thorntons, Inc.*, 731 F.3d 699, 709 (7th Cir. 2013) ("Standing alone, biased comments do not establish discriminatory motive unless they were by the decision maker and can be connected to the decision.").

Plaintiff has failed to establish that there was evidence of gender bias at the Cicero Facility, and, as discussed *supra*, Defendant has provided a reasonable, non-discriminatory explanation for Plaintiff's termination. As such, no reasonable jury could conclude that Defendant terminated Plaintiff because of her gender.

Accordingly, Plaintiff's gender discrimination claim fails.

## III.   <u>Retaliation</u>

Plaintiff's complaint asserts retaliation claims under the ADEA[6] and Title VII. (Dkt. 1 at 5-6). To prevail on her retaliation claims, Plaintiff must identify sufficient evidence for a jury to find: (1) a statutorily protected activity; (2) a materially adverse action taken by the employer; and (3) a causal connection between the two. *Gross v. Peoples Gas Light & Coke Co.*, 634 F. Supp. 3d 464, 496 (N.D. Ill. 2022) (quoting *Abebe v. Health & Hosp. Corp. of Marion Cnty.*, 35 F.4th 601,

---

[6] Defendant argues that Plaintiff also abandoned her retaliation claim under the ADEA by failing to oppose Defendant's motion for summary judgment on that claim. While the title of the section of Plaintiff's brief addressing her retaliation claim is "Plaintiff's Title VII Retaliation Claim," her response can be read to address her ADEA retaliation claim as well.

608 (7th Cir. 2022)). Here, the parties dispute whether Plaintiff engaged in a protected activity and whether Defendant took any adverse action because of the alleged protected activity.

### A.    <u>Protected Activity</u>

"Statutorily-protected activity 'requires more than simply a complaint about some situation at work, no matter how valid the complaint might be.'" *Skiba*, 884 F.3d at 718 (citing *Cole v. Bd. of Trs. of N. Ill. Univ.*, 838 F.3d 888, 901 (7th Cir. 2016)). "Rather, 'the complaint must indicate [that] discrimination occurred because of sex, race, national origin, or some other protected class.'" *Id*. (quoting *Tomanovich v. City of Indianapolis*, 457 F.3d 656, 663 (7th Cir. 2006)). "Merely complaining in general terms of discrimination or harassment, without indicating a connection to a protected class or providing facts sufficient to create that inference, is insufficient." *Id*.

Plaintiff argues that she first engaged in protected activity in October 2018 "when she informed HR of disparaging and disparate treatment." (Pl. Resp. at 13, Dkt. 44). But that is not what the record reflects. The purpose of Plaintiff's October 12, 2018 call with HR was to investigate concerns Plaintiff raised in her hotline complaint about unpaid overtime. In opposition to Defendant's motion for summary judgment, Plaintiff provided a witness statement, which summarizes the October 12, 2018 call. (Pl. Ex. 6, Dkt. 46-6). Based on a review of that statement, the Court concludes that Plaintiff did not raise any issues of age or sex discrimination or sexual harassment during the call. (*Id*.) Instead, the call focused on Plaintiff's concerns about unpaid overtime, her workload, an incident regarding Jeziorski's computer, and Sanchez allegedly sharing proprietary information with Salvaggio. (*Id*.) Certainly, Plaintiff did not indicate that she was raising concerns about age or gender discrimination during the investigation of her complaint regarding unpaid overtime.

Plaintiff argues that she next engaged in protected activity in November 2018, when she "raised concerns about a culture of 'machismo' at the Cicero" Facility. (Pl. Resp. at 13). Again, the Court disagrees. The evidence establishes that Plaintiff contacted Rajek on November 12, 2018, "to discuss various harassment / hostile work environment claims." (DRPSOF ¶ 13). On November 13, 2018, Rajek sent an email summarizing his discussion with Plaintiff. (*See* Pl. Ex. 12, Dkt. 46-12). Nowhere in that email does Rajek indicate that Plaintiff raised issues of gender discrimination or sexual harassment. Rajek's email, however, does provide context for Plaintiff's statement that there was an environment of "machismo" at the facility. (*Id*.) Specifically, Rajek summarized the relevant portion of Plaintiff's complaint as: "The work environment is affecting [plaintiff's] health. She used to love her job but the current management team has turned Cicero into an awful place to work. There is no compassion, no sympathy. It is an environment of 'machismo.' . . . Others feels the same way. However, everyone is scared to (sic) the Plant Manager that they will keep quiet because they are afraid to lose their job[.]" (*Id*.) Defendant contends that these generic statements do not constitute a "cognizable expression of opposition" to discriminatory practices. (Def. Reply at 12) (quoting *Jaburek v. Foxx*, 813 F.3d 626, 633 (7th Cir. 2016)). The Court concurs with that assessment.

In *Skiba*, the court found that emails to human resources, which framed the plaintiff's complaint "in general terms" and stated that "the issue was a mere 'personality conflict' and described [the plaintiff's supervisor] as an 'abusive' supervisor who 'berat[ed], badger[ed], and disrespect[ed]' his subordinates" did not constitute protected activity. 884 F.3d at 718. The court noted that the employee's emails did not reference protected classes at all, either directly or indirectly, and the employee never suggested that his supervisor acted with unlawful discriminatory animus. *Id*. The same reasoning applies here. Plaintiff made a general complaint to

human resources about her work environment. She did not reference a protected class or indicate that anyone acted with discriminatory animus. Moreover, Plaintiff has not explained what she meant by the term "machismo" or provided any examples of behavior that constituted "machismo." The only context the Court has for Plaintiff's complaint is provided in Rajek's email, which is not very illuminating. Thus, the Court cannot conclude that "machismo" includes acts of sex discrimination or harassment. Accordingly, the Court finds that Plaintiff did not engage in a protected activity. *See Smith v. Lafayette Bank & Tr. Co.*, 674 F.3d 655, 658 (7th Cir. 2012) ("In order for [the plaintiff's] complaints to constitute protected activity, they must include an objection to discrimination on the basis of age."); *Gleason v. Mesirow Fin., Inc.*, 118 F.3d 1134, 1147 (7th Cir. 1997) (finding that the plaintiff did not engage in protected activity under Title VII where she complained only about supervisor's "management style, in general terms").

### B.    <u>Causation</u>

Assuming that Plaintiff engaged in protected activity, her retaliation claim would nonetheless fail on causation. To prove causation, an employee must show that the employer would not have taken the adverse action but for the protected activity. *Vavra v. Honeywell Int'l Inc.*, No. 21 C 6847, 2023 WL 5348764, at *10 (N.D. Ill. Aug. 21, 2023). In making this showing, an employee may refer to direct evidence or circumstantial evidence such as "suspicious timing, ambiguous statements of animus, evidence other employees were treated differently, or evidence the employer's proffered reason for the adverse action was pretextual." *Adebiyi v. S. Suburban Coll.*, 98 F.4th 886, 892 (7th Cir. 2024) (quoting *Rozumalski v. W.F. Baird & Assocs., Ltd.*, 937 F.3d 919, 924 (7th Cir. 2019)). Here, Plaintiff points to various pieces of evidence in support of her argument that a reasonable jury could conclude that her complaints were the but-for cause of her termination but all fall short.

First, Plaintiff contends that prior to Villatoro and Sanchez being interviewed in December 2018 regarding Plaintiff's complaint, Villatoro's criticism of Plaintiff related mainly to issues with the overtime procedures; however, after the interviews, Villatoro and Sanchez's criticism of Plaintiff's performance "stepped up." (Pl. Resp. at 14). But the record establishes, and Plaintiff concedes, that there were at least two documented concerns related to Plaintiff's performance prior to their December 2018 interviews. "It is axiomatic that a plaintiff must engage in statutorily protected activity before an employer can retaliate against her for engaging in statutorily protected activity." *Enriquez v. U.S. Cellular Corp.*, No. 06 C 3135, 2008 WL 4925012, at *16 (N.D. Ill. Nov. 14, 2008) (citing *Durkin v. City of Chi.,* 341 F.3d 606, 614-615 (7th Cir.2003)). To rebut this principle, Plaintiff relies on the explanations for the July and September 2018 performance issues that she offered in her deposition; however, the purported explanations do not create a genuine dispute of material fact. "An employee's self-serving statements about her ability are insufficient to contradict an employer's negative assessment of that ability." *Austin v. Caterpillar, Inc.*, 67 F. App'x 956, 960 (7th Cir. 2003). This record contains ample documentation related to Plaintiff's performance before she lodged any complaints.

Second, Plaintiff points to the fact that Villatoro threatened to terminate her in January 2019—shortly after her complaints. The written warning reflects that Plaintiff was provided guidance regarding the overtime pre-approval process on multiple occasions, including in September 2017, April 2018, July 2018, and November 2018. (*See* Documented Written Warning, Ex. A-2, Dkt. 40-2). Yet, Plaintiff continued to submit overtime requests without going through the proper pre-approval process. (*Id.*) Under those circumstances, no reasonable jury could conclude that threatened termination for continually violating an established company policy is evidence of retaliation.

Next, Plaintiff contends that she was intentionally ranked as a "D" so that Defendant would be able to cover up the real reason for her termination. In support of this contention, Plaintiff states that Villatoro and Sanchez, whom she made complaints about, had a direct hand in the negative performance assessment. But that argument is a nonstarter, as leading up to her 2019 performance assessment, Plaintiff had many documented concerns on a range of issues in her prior reviews. In the end, Plaintiff has failed to put forth any evidence outside of her subjective opinion that the "D" performance ranking was not warranted.

Finally, Plaintiff contends that her explanation of what happened during the August 2019 performance assessment meeting demonstrates that there is a genuine issue of material fact to be decided at a trial. Defendant counters that it is undisputed that Plaintiff walked out of the meeting before it ended and initially refused to leave the building when instructed by Sanchez. As discussed above, Defendant has offered a reasonable justification for Plaintiff's termination in light of her negative assessment and subsequent actions. This Court does not "sit as a superpersonnel department where disappointed employees can have the merits of an employer's decision replayed to determine best business practices." *Blise*, 409 F.3d at 867. Moreover, as Defendant argues, Plaintiff was even not terminated after the meeting; her employment ended weeks later because she failed to respond to Defendant's offer. Lastly, the ten-month temporal gap between Plaintiff's complaint in November 2018 and her discharge in September 2019 does "little to raise suspicion." *Naficy v. Ill. Dep't of Human Servs.*, 697 F.3d 504, 513 (7th Cir.2012) (finding that nine-month gap between complaint and layoff was insufficient to raise suspicion of retaliation).

Overall, Plaintiff has failed to prove that she engaged in a protected activity and that such protected activity was the but-for cause of her termination. Accordingly, Plaintiff's retaliation claims under the ADEA and Title VII fail.

**IV.**    **Punitive Damages**

Because each of Plaintiff's claims fail, the Court need not consider whether Plaintiff is entitled to punitive damages.

**CONCLUSION**

For the reasons stated above, Defendant's motion for summary judgment [39] is granted. Judgment is entered in favor of Defendant.

**DATED**: August 14, 2024            **ENTERED**:

_LaShonda A. Hunt_
_____
LaShonda A. Hunt
United States District Judge